NUNNALLY INV. CO. v. UNITED STATES.

No. 42389.

Court of Claims.

Jan. 6, 1941.

Wm. A. Sutherland, of Atlanta, Ga. (Crenshaw, Hansell & Gunby and Sutherland, Tuttle & Brennan, all of Atlanta, Ga., on the briefs), for plaintiff.

J. W. Hussey, of Washingon, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the briefs), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, and GREEN, Judges.

GREEN, Judge.

This is an action to recover the amount of $18,857.82 alleged to have been overpaid as income and profits taxes for the year 1920, together with interest thereon of $577.65.

On January 2, 1920, plaintiff sold all its business and assets. Part of the consideration of the sale was the assumption of certain taxes by the purchaser, which were paid in the years 1921 and 1922. The amount of these taxes was included by the Commissioner as part of plaintiff's income

for the year 1920, and the Commissioner in August, 1926, accordingly assessed against plaintiff income and profits taxes for the year 1920 in the sum of $493,817.95 and interest thereon of $16,113.34, making a total amount of $509,931.29, which was demanded of plaintiff by the U. S. Collector of Internal Revenue and paid to the collector September 21, 1926.

The plaintiff duly filed a refund claim for the whole amount of taxes and interest paid, alleging that the Commissioner's statement of income was erroneous by reason of his understatement of the basis of the assets sold on January 2, 1920. No other ground for refund was stated in the claim. More than six months later the plaintiff filed suit against the Collector of Internal Revenue on the same grounds that were stated in the claim. The case was tried by a jury which rendered a special verdict and a stipulation was entered into between the parties that judgment should be entered in favor of the plaintiff for $250,000, with interest and cost, which was accordingly done on July 6, 1929. Pursuant to this judgment a certificate of probable cause was granted and thereafter a certificate of overassessment was issued to the plaintiff in accordance with the judgment, and the total amount due thereon was paid to the plaintiff by defendant about September 29, 1929.

On September 13, 1930, the plaintiff filed with the Collector of Internal Revenue of Atlanta a claim for refund of $200,000, income and profits taxes for 1920. The claim was based on the alleged right to special assessment, and other grounds which have now been abandoned, and also upon the ground on which this suit is now based, namely, that additional income and excess-profits taxes paid in 1921 and 1922 by the purchaser in accordance with the terms of the agreement of sale of January 2, 1920, did not constitute income of the plaintiff for 1920 but only in the years for which the payments were made. This claim for refund having been rejected suit was begun thereon on March 18, 1933. Thereafter certain portions of the petition were stricken leaving only the claim that additional income and profits taxes paid by plaintiff's purchaser in 1921 and 1922 did not constitute taxable income to plaintiff for the year 1920, the records and returns being kept on a cash receipts and disbursements basis.

Two questions are presented by the case. (1) Whether taxes for prior years assumed by the purchaser of plaintiff in 1920 were income to plaintiff in 1920, although the taxes were not actually paid in that year and (2) Whether plaintiff is precluded from recovery in this action of any refund of 1920 taxes by reason of the judgment obtained against the United States Collector of Internal Revenue for the District of Georgia.

■ We think it is clear that the fact that plaintiff was on a cash basis makes the 1921 and 1922 payments not income in 1920. See W. A. Hoult v. Commissioner, 23 B.T.A. 804; A. W. Henn v. Commissioner, 20 B.T.A. 1133; and Charles C. Ruprecht v. Commissioner, 16 B.T.A. 919.

The question of whether plaintiff's recovery is barred by reason of the judgment which it obtained against the defendant in the suit against the collector presents a much more difficult problem. The plaintiff insists that an unbroken line of decisions by the Supreme Court lay down the rule that a judgment against a collector for taxes illegally collected is personal, and does not prevent the taxpayer from bringing a later suit against the United States involving errors alleged to exist in the computation of taxes for the same years. Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 416, 63 L.Ed. 828, is cited as the leading case promulgating this doctrine. In this case, like the one at bar, the taxpayer had sued the collector on the ground that the taxes had been illegally collected, and recovered judgment which was paid by the United States. A suit was later begun for a residue of the same taxes. In defense it was pleaded that the suit was barred by a former judgment. The court referred to the fact that it was the duty of the District Attorney to appear for the collector in such suits under the statutes; that the judgment is to be paid by the United States, and the collector is exempted from execution if a certificate is granted by the court that there was probable cause for his act. The court further said: "* * * But no one could contend that technically a judgment of a District Court in a suit against a collector was a judgment against or in favor of the United States. It is hard to say that the United States is privy to such a judgment or that it would be bound by it if a suit were brought in the Court of Claims. The suit

is personal and its incidents, such as the nature of the defenses open and the allowance of interest, are different. It does not concern property in which the United States asserts an interest on its own behalf or as trustee, as in Minnesota v. Hitchcock, 185 U.S. 373, 388, 22 S.Ct. 650, 46 L.Ed. 954. At the time the judgment is entered the United States is a stranger. Subsequently the discretionary action of officials may, or it may not, give the United States a practical interest in the amount of the judgment, as determining the amount of a claim against it, but the claim would arise from the subsequent official act, not from the judgment itself. United States v. Frerichs, 124 U.S. 315, 8 S.Ct. 514, 31 L.Ed. 471. But perhaps it would be enough to say that if the judgment otherwise were a bar the bar would be removed by the subsequent enactment of the Act of July 27, 1912, c. 256, 37 Stat. 240, upon which, as well as the Act of 1902, this claim is based."

Counsel for the defendant call attention to the last sentence of the part of the opinion quoted above, and argue that it shows that the case was in fact decided upon a different ground from that which was first stated, and that all that is contained in the opinion with reference to the bar of a former judgment is merely dictum.

The principal contention of the defendant is, however, that the Sage Case, supra, has been overruled by the opinion in the case of Moore Ice Cream Co. v. Rose, 289 U.S. 373, 381, 382, 383, 53 S.Ct. 620, 623, 77 L.Ed. 1265, in which the Supreme Court, with reference to a suit against a collector, said: "His duty being imperative, he is protected by the command of his superior from liability for trespass * * *, and is entitled as of right to a certificate converting the suit against him into one against the government."

And also that—

"A suit against a collector who has collected a tax in the fulfillment of a ministerial duty is to-day an anomalous relic of bygone modes of thought. He is not suable as a trespasser, nor is he to pay out of his own purse. He is made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"In such circumstances his presence as a defendant is merely a remedial expedient for bringing the government into court."

The court further said with reference to the collector: "Execution can never issue against him upon any judgment recovered in favor of the taxpayer."

But in Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 312, 53 S.Ct. 150, 77 L.Ed. 325, decided during the same term, but at a prior date, it was held that a judgment against a collector was not res judicata against the Commissioner or the United States, citing Graham & Foster v. Goodcell, 282 U.S. 409, 430, 51 S.Ct. 186, 75 L.Ed. 415, and Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828.

So also in Tait v. Western Maryland Railway Co., 289 U.S. 620, 627, 53 S.Ct. 706, 708, 77 L.Ed. 1405, the Supreme Court said: "In a suit for unlawful exaction the liability of a collector is not official but personal. Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828; Smietanka v. Indiana Steel Co., 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99; Graham & Foster v. Goodcell, 282 U.S. 409, 430, 51 S.Ct. 186, 75 L.Ed. 415. And for this reason a judgment in a suit to which he was a party does not conclude the Commissioner or the United States. Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 311, 53 S.Ct. 150, 77 L.Ed. 325."

And in the case of Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402, 403, 60 S.Ct. 907, 917, 84 L.Ed. 1263, the court said: "A judgment is res judicata in a second action upon the same claim between the same parties or those in privity with them. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government. See Tait v. Western Maryland Railway Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405. * * * Cases holding that a judgment in a suit against a collector for unlawful exaction is not a bar to a subsequent suit by or against the Commissioner or the United States (Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828; Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325) are not in point, since the suit against the collector is 'personal and its incidents, such as the nature of the defenses open and the allowance of interest, are different.' Sage v.

United States, supra, 250 U.S. at page 37, 39 S.Ct. at page 416, 63 L.Ed. 828."

The defendant contends that although the parties in the case at bar are not the same as those in the suit against the collector, the United States is privy to the case against the collector under the rules laid down in the Moore Ice Cream Co. case, supra, and that even if the doctrine of res judicata does not in a strict sense apply the plaintiff is nonetheless estopped by its judgment obtained against the collector. In support of this contention counsel for defendant cites the case of United States v. California Bridge & Construction Co., 245 U.S. 337, 341, 38 S.Ct. 91, 93, 62 L.Ed. 332, in which the court said: "The doctrine of estoppel by judgment, or res judicata, as a practical matter, proceeds upon the principle that one person shall not a second time litigate, with the same person or with another so identified in interest with such person that he represents the same legal right, precisely the same question, particular controversy, or issue which has been necessarily tried and finally determined, upon its merits, by a court of competent jurisdiction, in a judgment in personam in a former suit. * * *"

This same rule is applied by the Court of Civil Appeals of Texas in the case of Cauble v. Cauble, 2 S.W.2d 967, which notes a distinction between res judicata and estoppel by judgment.

In further support of this contention defendant quotes from Paul's Selected Studies in Federal Taxation, 2d Ed., pp. 124, 126, in which in commenting on the Western Maryland Railway Co. case and Bankers Pocahontas Coal Co. case the view is set forth that the real party in interest in these suits against a collector is always the United States, and that the decision of Justice Holmes in the Sage case, supra, that a suit against a collector is purely personal in nature must be considered as having been rendered inapplicable by the decision in the Moore Ice Cream Co. case.

The defendant further calls attention to an article in 46 Yale Law Journal, 1320 (1937), in which the author says (pp. 1342, 1343), in substance, that in the Moore Ice Cream Co. case the Supreme Court specifically held that where the collector acted pursuant to an assessment, the United States becomes a party to the judgment as a matter of law, and further that the decision in the Sage case should no longer be followed.

Attention is also called to that part of the opinion in Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 917, 84 L.Ed. 1263, which holds that identity of the parties is not a matter of form but of substance and that "a judgment is res judicata in a second action upon the same claim between the same parties or those in privity with them."

It might further be said that there can also be found in the decisions of the State courts many cases which hold that a litigant should be allowed but one opportunity to try his case on the merits in the interests of the public, and that on grounds of public policy, the principle of estoppel should be expanded so as to embrace within the estoppel of a judgment persons who are not, strictly speaking, either parties to the suit. Also it would seem that as the collector under the decision in the Moore Ice Cream Co. case was the duly authorized agent of the Government the question would arise whether the judgment in a case against him would be binding against the United States and render the matter of litigation res judicata.

All the matters presented for our consideration by the defendant would have much force and perhaps be sufficient to warrant a decision in its favor if it were not for the positive decisions of the Supreme Court to the contrary. We cannot treat the language used by Justice Holmes in the Sage case, supra, as merely dictum when there are three recent cases which cite the case as an authority that a judgment against a collector is not res judicata against the Commissioner or the United States. For the same reason we think that it cannot be held that the Moore Ice Cream Co. case overrules the Sage case or the Bankers' Pocahontas Coal Co. case, neither of which are mentioned in the first named decision.

As we have already shown the Supreme Court in the Tait case, supra, decided three weeks subsequent to the decision in the Moore Ice Cream Co. case again confirms the rule laid down in the Bankers' Pocahontas Coal Co. case, and finally in the very recent decision of the Sunshine Anthracite Coal Co. case, supra, refers to the decision in the Sage case and the Bankers'

Pocahontas Coal Co. case as recognized authorities.

■ Without discussing the legal principles involved in the case now before us, we are of the opinion that the repeated holdings of the Supreme Court sustaining the Sage case and ignoring the Moore Ice Cream Co. case make it proper in the instant case to apply the doctrine of stare decisis and feel constrained to hold plaintiff's action is not barred by the judgment against the collector. This conclusion makes it unnecessary to consider the other questions raised in the case.

■ The findings show that plaintiff's purchaser agreed to pay taxes for 1917, 1918, and 1919 due from the plaintiff in the sum of $39,739.50. Although this amount was not paid until 1921 and 1922, it was erroneously included in the gross income of plaintiff for 1920 and plaintiff's taxes computed accordingly. The plaintiff is entitled to recover the amount its taxes for 1920 were increased by this error, together with interest as provided by law. But neither party has submitted a calculation of the amount of plaintiff's recovery, if entitled to judgment. The defendant presents a claim that plaintiff's recovery cannot be properly calculated as a reason for not entering judgment in its favor. With this we do not agree. On the contrary we think it can be done. Each party is granted ten days in which to file a typewritten statement, which on the part of the plaintiff shall contain a calculation of the amount due in accordance with this judgment, and on the part of the defendant a memorandum containing such further observations as its counsel may see fit to present with reference to the amount of plaintiff's recovery, and the papers so filed will be considered by the court in entering judgment.

WHALEY, Chief Justice, and LITTLETON, Judge, concur.

WHITAKER, Judge (dissenting).

It is axiomatic that a former judgment is res judicata in a second suit on the same cause of action, not only as to those who were parties to the former action, but also as to their privies. The cause of action in the present suit is the same as in the former one and the plaintiff is the same; but in the former one the Collector of Internal Revenue of the United States was the defendant, whereas in this suit it is the United States that is the defendant, and not its collector. The question presented, therefore, is whether or not under the circumstances of this case the United States in the former action was a privy of its collector.

Section 12 of the Act of March 3, 1863, 12 Stat. 737, 741, 28 U.S.C.A. § 842, provides that in suits against collectors to recover taxes "no execution shall issue against such collector or other officer, but the amount so recovered shall, upon final judgment, be provided for and paid out of the proper appropriation from the treasury" in these two cases, (1) where the court shall have certified "that there was probable cause for the act done by the collector or other officer," or (2) where "he acted under the directions of the Secretary of the Treasury or other proper officer of the government."

In this case it appears from our findings of fact that in collecting the tax from this plaintiff the collector acted in pursuance of the second condition, that is, under an assessment made by the Commissioner of Internal Revenue. Under such circumstances the judge had no discretion as to whether or not the necessary certificate should be issued. The collector was entitled to it as of right. Had the collector acted on his own motion, without an assessment or other direction from his superiors, the certificate would have issued or not according to whether or not the judge believed that he had acted with probable cause; but not so where the collector acted in pursuance of instructions. Here the judge had no discretion. Upon it appearing that the collector acted under instructions, he was compelled to issue the certificate. Therefore, in this case, under the statute, no execution could possibly issue against the collector; but, of necessity, the judgment had to "be provided for and paid out of the proper appropriation from the treasury."

Under such circumstances, the United States knew when suit was brought against the collector that it would have to respond to any judgment rendered. When the suit was instituted it was, therefore, put on guard to defend its interest. This it in fact did in the former proceeding in this case. Its United States Attorney appeared and

defended the action; he defended, not to save the collector from an execution, but to save the United States from responsibility for the judgment.

In that suit the United States had an opportunity to interpose every defense it could have interposed had the suit been against it in name, instead of against it in substance; and the plaintiff had the right to advance every ground for recovery that it could have advanced had the United States been the nominal defendant. Every reason for the rule of res judicata is, therefore, present in this case. The reason a former judgment binds not only the same parties, but also their privies, is that a person in privity with a party to the action is under the obligation, because of his interest in the outcome of the litigation, to see to it that all defenses are raised in that suit to defeat it. He is under this obligation because the burden of the judgment may fall on him, in whole or in part. Therefore, having once had the opportunity to defend, he is denied it if later a suit is brought against him in person.

I have no doubt that the former judgment in this case is res judicata. My only concern is whether or not this view is in harmony with prior decisions of the Supreme Court. I think it is, if those decisions can be properly limited to cases where the United States might not have to pay the judgment and liability therefor might fall on the collector personally. I think they can be.

In the following discussion of the cases in the Supreme Court it is necessary to keep in mind that there are two contingencies under which a ·judgment against a collector must be satisfied by the United States; one is in a case where the judge shall issue a certificate that "there was probable cause for the act done by the collector or other officer"; and the other is "that he acted under the directions of the Secretary of the Treasury or other proper officer of the government." My view is that former decisions of the Supreme Court holding that a judgment against the collector is not res judicata in a later suit against the United States should be limited to cases where the judge must exercise his discretion as to whether or not to issue a certificate of probable cause, and do not apply to a case where the collector acted under directions of his superior, in which case the certificate must issue of necessity.

The leading case is Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L. Ed. 828. In this case the court held that a judgment against the collector was not res judicata in a later proceeding against the United States. This was on the theory that the suit against the collector was a personal one, for a wrong committed by him personally in exacting taxes which the taxpayer did not owe. Since it was a personal action, for which he might have to respond personally without the right of indemnification by the United States, the court held that a judgment against him was not res judicata in a later suit against the United Sates, which might not have been involved by the former judgment. But it did not appear in that case whether or not the collector in collecting the taxes had acted on his own motion or under directions of the Secretary of the Treasury. Apparently the decision was grounded upon the fact that the certificate might or might not have been granted within the discretion of the trial judge, and that, therefore, until such a certificate should issue, the United States did not know whether or not it would become liable for the judgment. Since it could not know this until after the judgment was rendered, the court held it was a stranger to the judgment at the time it was rendered, and for this reason the judgment would not bind it in a later action. At the bottom of page 37 of 250 U.S., at page 416 of 39 S.Ct., 63 L.Ed. 828, the court said: "At the time the judgment is entered the United States is a stranger. Subsequently the *discretionary* action of officials may, *or it may not,* give the United States a practical interest in the amount of the judgment, as determining the amount of a claim against it, but the claim would arise from the subsequent official act, not from the judgment itself. [Italics supplied.]"

So far as appears, the court's attention was not directed to the difference between a case for the issuance of a certificate of probable cause and a case where the collector was performing merely a ministerial duty in collecting an assessment made by his superiors, in which case a certificate must issue as a matter of course. In the former the United States might or might not become liable for the judgment; in the latter it could not but be.

342

In the case of Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325, which followed the decision in the Sage case, supra, it did not appear whether or not the collector had acted in pursuance of an assessment or on his own motion, nor is there anything in this case, also, to indicate that the court's attention had been directed to the distinction between a suit against a collector acting under directions from his superior officers and one in which he had acted on his own motion. It was merely stated without discussion that a judgment against a collector was not "res judicata against the Commissioner or the United States."

The first case in which this distinction seems to have come to the attention of the court is Moore Ice Cream Co., Inc., v. Rose, Collector of Internal Revenue, 289 U.S. 373, 53 S.Ct. 620, 623, 77 L.Ed. 1265. In view of what was held in that case it seems to me that had this distinction come to the attention of the court in the Sage case and in the Bankers' Pocahontas Coal Company case, these decisions would have been limited to instances where the collector had acted without instructions from his superior.

This distinction between the relation of the United States to a suit against the collector where he had acted under directions of his superior officer, and its relation to one where he had acted on his own motion was carefully developed by the court in this case. It did not deal with the question of whether or not a judgment against a collector would be res judicata in a later suit against the United States, but it seems to me that it necessarily follows from its decision that it would be in a case where he had acted under directions of his superior.

The Moore case involved the necessity for protest as a prerequisite to a suit to recover taxes erroneously exacted. The argument in support of the necessity for protest was that while the statute might eliminate the necessity for it in a suit against the government, it could not constitutionally do so in a suit against the collector, as to taxes paid prior to the passage of the act, since the collector was under a personal obligation to pay any judgment recovered against him. The court, discussing this personal liability, and after calling attention to the fact that there were two different conditions upon which the government agreed to indemnify the collector, proceeded to discuss at length the difference between the relation of the collector and of the United States in a suit in which the collector had acted under the directions of the Secretary of the Treasury or other proper officer of the government, and in a suit where he had acted on his own motion. Dealing with a case where he had acted under instructions, the court said:

"There was nothing left to his discretion. Other duties less definitely prescribed may leave a margin for judgment and for individual initiative. Cf. Agnew v. Haymes [4 Cir.] 141 F. 631. There was no such margin here. His duty being imperative, *he is protected by the command of his superior from liability for trespass* [citing cases], and is entitled *as of right to a certificate converting the suit against him into one against the government.* * * * The case is not one for a certificate of probable cause, as it might be if the officer had trespassed under a mistaken sense of duty. In such circumstances a certain latitude of judgment may be accorded to the certifying judge, though even then it is enough that a seizure has been made upon grounds of reasonable suspicion. [Citing cases.] One does not speak of probable cause when justification is complete. Here the certifying judge will be subject to a specific duty upon the facts admitted by the demurrer to relieve the collector of personal liability and to shift the burden to the Treasury.

* * * * * *

"A suit against a collector who has collected a tax in the fulfilment of *a ministerial duty* is to-day an anomalous relic of bygone modes of thought. *He is not suable as a trespasser, nor is he to pay out of his own purse.* He is made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay. Philadelphia v. Collector, supra, [page 731 of 5 Wall., 18 L.Ed. 614]. There may have been utility in such procedural devices in days when the government was not suable as freely as now. [Citing cases.] They have little utility to-day, at all events where the complaint against the officer shows upon its face that in the process of collecting he was acting in the line of duty, and that in the line of duty he has turned the money over. In such circumstances his presence as a defendant is merely a remedial expedient for

bringing the government into court. [Italics supplied.]"

Since in such a case the collector was not personally liable for trespass (the basis for the decision of the court in the Sage and Bankers' Coal Company cases) and could not be subjected to personal liability in any event, the court held that to deprive him of the necessity for protest against the exaction of a tax, paid prior to the enactment of the statute, did not deny him due process.

But the court was careful to limit its opinion to a case where the collector was acting under the directions of his superior officer, and expressly differentiated such a case from one where the issuance of a certificate by the court was "dependent upon controverted facts, or upon facts permitting different inferences or calling upon the judge to exercise discretion." This was for the reason that in the latter case the United States might never become liable for the judgment, whereas in the former its liability was definite and certain.

In view of this decision, I think the decision in the Sage case and in the Bankers Pocahontas Coal Company case must be limited to instances where the collector has not acted under directions of his superior. Where he has so acted, he has committed no personal trespass and can in no event be made to pay the judgment rendered; the liability therefor always falls upon the United States. The liability under the judgment being inescapable, responsibility is on the United States to offer all of its defenses in that suit. Having thus had its day in court, it cannot later bring a suit on the same cause of action. Conversely, the plaintiff, having once had the opportunity to present its claim in full against the United States, although the collector was the nominal defendant, it cannot do so again in a later action. It may be otherwise where the collector has acted on his own motion and not under instructions, but not in a case where the liability for the judgment must of necessity fall on the United States.

I do not think the decision in Tait v. Western Maryland Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 708, 77 L.Ed. 1405, is contrary to this view. On the contrary, it is some support for it. There the court said: "In a suit for unlawful exaction the liability of a collector is not official but personal. Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828; Smietanka v. Indiana Steel Co., 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99; Graham & Foster v. Goodcell, 282 U.S. 409, 430, 51 S.Ct. 186, 75 L.Ed. 415. And for this reason a judgment in a suit to which he was a party does not conclude the Commissioner or the United States. Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 311, 53 S.Ct. 150, 77 L.Ed. 325. We think, however, that where a question has been adjudged as between a taxpayer and the government or its official agent, the Commissioner, the collector, being an official inferior in authority, and acting under them, is in such privity with them that he is estopped by the judgment. See Second National Bank of Saginaw v. Woodworth (D.C.) 54 F.(2d) 672; Bertelsen v. White (D.C.) 58 F.(2d) 792."

While, the court stated, a judgment in a personal action against the collector is not res judicata in a later suit against the Commissioner or the United States, still, it said, a former judgment against the United States or the Commissioner would estop the collector in a later suit, because of the privity between him and the United States and its Commissioner. If this be true, how can it be doubted that a judgment against the collector for an act done by him at the direction of the Commissioner would be an estoppel against the Commissioner or the United States in a later suit? And a judgment cannot be an estoppel against one party to a suit and not against the other. Where the collector acts under the Commissioner's direction, and not on his own motion, his act is the act of the Commissioner, and a judgment against him for this act must of necessity bind the Commissioner. Under this decision, it would be otherwise if he acted on his own motion. I know of no other theory on which the quoted statements from this case can be harmonized.

There is nothing in the decision in Sunshine Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263, which is contrary to this view. This case merely states again, incidentally, the proposition laid down in the Sage case, that the suit against the collector is personal, and for this reason a judgment in such a suit is not a bar to a subsequent suit against the United States. I think this expression, as the similar expression in the Sage case, must be

limited to those cases where the collector might be personally liable for the payment of the judgment.

For the reasons stated, I think plaintiff's petition should be dismissed.