## UNITED STATES *v.* NUNNALLY INVESTMENT CO.

No. 990, October Term, 1940.   Argued March 10, 11, 1942.—Decided May 11, 1942.

---

[1] See *e. g. In re Jarvis,* 66 Kan. 329, 31 P. 2d 576.   Cf. *Smith* v. *O'Grady,* 312 U. S. 329.

*Mr. Arnold Raum,* with whom *Solicitor General Fahy, Assistant Attorney General Clark,* and *Mr. J. Louis Monarch* and *Mrs. Elizabeth B. Davis* were on the brief, for the United States.

*Mr. W. A. Sutherland* for respondent.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is a suit against the United States to recover taxes for the year 1920. In that year the taxpayer, the respondent here, sold its business and all its assets to another corporation. The consideration consisted of cash and the assumption of certain of the respondent's obligations, including federal taxes for previous years. The purchaser paid part of these taxes in 1920, the remainder in 1921 and 1922. In determining a deficiency for the year 1920, the Commissioner employed a lower basis of the assets sold than was used by the respondent. The Commissioner computed the selling price by including the full amount of the taxes which the purchaser agreed to assume. After paying the assessed tax, the respondent filed a claim for refund, alleging only that the Commissioner had understated the basis of the assets sold. In due course a suit was brought against the Collector in the District Court. A settlement was reached, under which judgment for the taxpayer was entered. In accordance with their agreement, neither party appealed.

Thereafter, the respondent filed a second refund claim, asserting that the taxes assumed by the purchaser which were not paid in 1920 were not taxable to the respondent in that year. This claim was rejected, and a suit against the United States was begun in the Court of Claims.

Holding that the judgment against the Collector in the District Court was not *res judicata* of the taxpayers' claim in this suit against the United States, the Court of Claims (with one judge dissenting) gave judgment for the respondent. 36 F. Supp. 332. In view of the importance of this question in the administration of the federal income tax law and its relation to the decision in *Moore Ice Cream Co.* v. *Rose,* 289 U. S. 373, we brought the case here. 314 U. S. 702.

Nearly a quarter-century ago in *Sage* v. *United States,* 250 U. S. 33, this Court upon full consideration announced the doctrine that the United States is a "stranger" to a judgment resulting from a suit brought against a collector, and that such a judgment is, therefore, not a bar in a subsequent action upon the same claim against the United States. This was not a novel doctrine. The result was drawn from the conception of a suit against a collector as "personal," since he was personally responsible for illegally exacting monies under the claim that they were due as taxes. Such a "personal" remedy against the collector, derived from the common-law action of *indebitatus assumpsit,* has always been part of our fiscal administration. Unless the application given to this remedy by the doctrine of the *Sage* case has been displaced by Congress or renounced by later decisions of this Court, the judgment must stand. Concededly, Congress has not done so. And although recognition has been made of the technical nature of a suit against a collector, no support can be found for the contention that the *Sage* doctrine has been discarded as an anachronism. On the contrary, the rule has been reaffirmed in an unbroken line of authority.

Soon after the decision in the *Sage* case, the question was presented whether an action against a collector could be continued against his successor. This Court held that it could not, because the *Sage* case had settled that such a suit was "personal." See *Smietanka* v. *Indiana Steel*

*Co.,* 257 U. S. 1; *Union Trust Co.* v. *Wardell,* 258 U. S. 537. In *Bankers Coal Co.* v. *Burnet,* 287 U. S. 308, a suit against a collector with respect to taxes for the years 1914–1919 had resulted in a determination that the taxpayer was entitled to a depletion allowance of five cents per ton on coal mine royalties. It was contended that this determination was *res judicata* of that issue in a subsequent action against the Commissioner relating to taxes for later years. The Court, again relying on the *Sage* case, rejected the argument in these words: "With respect to this contention it is sufficient to say that the suit in the District Court was not against the Commissioner of Internal Revenue, the respondent here, but against the Collector, judgment against whom is not *res adjudicata* against the Commissioner or the United States." 287 U. S. at 311–312.

The Government leans heavily upon *Moore Ice Cream Co.* v. *Rose,* 289 U. S. 373. In that case the constitutionality of § 1014 of the Revenue Act of 1924, 43 Stat. 253, 343, providing that a taxpayer may recover an unlawful federal tax even though he paid the tax without protest, was upheld as applied to a payment without protest made prior to the enactment of the provision. In reaching this conclusion, the Court noted that, under R. S. § 989, 28 U. S. C. § 842, a collector who acts under the directions of the Secretary of the Treasury, or other proper officer of the Government, "is entitled as of right to a certificate converting the suit against him into one against the Government . . . A suit against a Collector who has collected a tax in the fulfillment of a ministerial duty is today an anomalous relic of bygone modes of thought. He is not suable as a trespasser, nor is he to pay out of his own purse. He is made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay. . . . There may have been utility in such procedural

devices in days when the Government was not suable as freely as now. . . . They have little utility today, at all events where the complaint against the officer shows upon its face that in the process of collecting he was acting in the line of duty, and that in the line of duty he has turned the money over. In such circumstances his presence as a defendant is merely a remedial expedient for bringing the Government into court." 289 U. S. at 381–83.

The Government urges that, even though the *Moore Ice Cream* case was not concerned with the conclusiveness of a judgment in a suit against the collector, its rationale undermined the *Sage* doctrine. But such has not been the influence of the *Moore Ice Cream* case on the subsequent course of decisions relevant to our purpose. *Tait* v. *Western Maryland Ry. Co.*, 289 U. S. 620, decided by a unanimous Court three weeks after the decision in the *Moore Ice Cream* case, is incontrovertible proof that the *Sage* doctrine was left unimpaired. The Court there held that a judgment in a suit against the Commissioner was binding in a subsequent action against the United States and the collector. The doctrine in the *Sage* case was explicitly reaffirmed: "In a suit for unlawful exaction the liability of a collector is not official but personal. *Sage* v. *United States*, 250 U. S. 33; *Smietanka* v. *Indiana Steel Co.*, 257 U. S. 1; *Graham & Foster* v. *Goodcell*, 282 U. S. 409, 430. And for this reason a judgment in a suit to which he was a party does not conclude the Commissioner or the United States. *Bankers Pocahontas Coal Co.* v. *Burnet*, 287 U. S. 308, 311. We think, however, that where a question has been adjudged as between a taxpayer and the Government or its official agent, the Commissioner, the Collector, being an official inferior in authority, and acting under them, is in such privity with them that he is estopped by the judgment." 289 U. S. at 627.

More recently, in *Sunshine Coal Co.* v. *Adkins*, 310 U. S. 381, where the principle of *res judicata* was applied to

suits to which an administrative agency was a party, the Court again expressly adhered to the doctrine of the *Sage* case: "Cases holding that a judgment in a suit against a collector for unlawful exaction is not a bar to a subsequent suit by or against the Commissioner or the United States (*Sage* v. *United States,* 250 U. S. 33; *Bankers Pocahontas Coal Co.* v. *Burnet,* 287 U. S. 308) are not in point, since the suit against the collector is 'personal and its incidents, such as the nature of the defenses open and the allowance of interest, are different.' " 310 U. S. at 403. And earlier in this term in *United States* v. *Kales,* 314 U. S. 186, in speaking of the right of a taxpayer to maintain separate suits against a collector and the Government for tax payments made to two collectors on income derived from a single transaction in a single tax year, the Court said: "The judgment against the collector is a personal judgment, to which the United States is a stranger except as it has obligated itself to pay it. See *Sage* v. *United States, supra; Smietanka* v. *Indiana Steel Co., supra,* 4, 5. While the statutes have for most practical purposes reduced the personal liability of the collector to a fiction, the course of the legislation indicates clearly enough that it is a fiction intended to be acted upon to the extent that the right to maintain the suit and its incidents, until judgment rendered, are to be left undisturbed. . . . The right to pursue the common law action against the collector is too deeply imbedded in the statutes and judicial decisions of the United States to admit of so radical a departure from its traditional use and consequences as the Government now urges, without further Congressional action." 314 U. S. at 199–200.

In summary, therefore, an imposing series of opinions has fortified the original authority of the *Sage* doctrine. No doubt the precise question raised in each of these cases was different from the one now before us, and each case might have been decided without reference to the prin-

ciples underlying the rule in the *Sage* case. But this only serves to emphasize the obduracy of the doctrine as part of the historical scheme of revenue administration. It would have been easy in all of these cases to dissipate the force of the doctrine which the *Sage* case represents by rejecting it and resting the decision in that case upon the alternative ground afforded by the Act of July 27, 1912, c. 256, 37 Stat. 240. That this long line of cases should have referred to and relied upon the *Sage* case without rejecting the doctrine for which it was cited only underlines still further its persistence.

Even when this Court found that the common-law right to sue the collector had argumentatively been withdrawn, see *Cary* v. *Curtis,* 3 How. 236, Congress promptly restored that right. Act of February 26, 1845, c. 22, 5 Stat. 727. The problem of legal remedies appropriate for fiscal administration rests within easy Congressional control. Congress can deal with the matter comprehensively, unembarrassed by the limitations of a litigation involving only one phase of a complex problem. The Government itself does not now ask us to jettison the whole notion of suing a collector personally. It merely asks us to eliminate one consequence of that conception. In the field of custom duties Congress has devised a comprehensive and interrelated scheme of administrative and judicial remedies. See Act of June 17, 1930, 46 Stat. 590, 734, 19 U. S. C. §§ 1514–15; Freund, Administrative Powers over Persons and Property, pp. 553–60. If the doctrine of the *Sage* case is now to be abandoned, such a determination of policy in the administration of the income tax law should be made by Congress, which maintains a Joint Committee on Internal Revenue Taxation charged with the duty of investigating the operation of the federal revenue laws and recommending such legislation as may be deemed desirable.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, and MR. JUSTICE BYRNES dissent for the reasons (1) that here, unlike the situation in *United States* v. *Kales,* 314 U. S. 186, the taxpayer had but a single cause of action and could have raised every issue with respect to the validity of the taxes in the earlier suit; (2) that here, unlike the situation in *Sage* v. *United States,* 250 U. S. 33, 38–39, there had been no intervening legislation which created rights and lifted the bar of the judgment in the earlier suit; and (3) that in the earlier suit the United States became "a party to the judgment as a matter of law" (Griswold, Res Judicata in Federal Tax Cases, 46 Yale L. Journ. 1320, 1342), since in these days the presence of the collector as a defendant who acts "in the line of duty" is "merely a remedial expedient for bringing the Government into court." *Moore Ice Cream Co.* v. *Rose,* 289 U. S. 373, 383.