142 F.2d 240 (1944)
WALLACE
v.
UNITED STATES.
No. 219.
Circuit Court of Appeals, Second Circuit.
February 17, 1944.
*241 William B. Mahoney, of Buffalo, N. Y., for plaintiff-respondent.
Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Paul R. Russell, Sp. Assts. to the Atty. Gen. (George L. Grobe, U. S. Atty., and R. Norman Kirchgraber, Asst. U. S. Atty., both of Buffalo, N. Y., of counsel), for defendant-appellant.
Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.
In 1933 the plaintiff, Wallace, a citizen of the United States, brought this suit in the District Court to recover $4,419.35 which he alleged had been paid by him to the United States under duress, pursuant to an illegal overassessment of income tax for the year 1929.
His counsel noticed the case for trial from 1934 to November 1937. On the call *242 of the trial calendar on November 9, 1937, his counsel did not appear, and the trial court granted a motion made by the defendant, the United States, dismissing the suit for want of prosecution; no formal order to that effect, however, was entered until May 19, 1938. On November 4, 1940, Wallace's counsel moved for an order restoring the case to the trial calendar, supporting that motion by his affidavit which stated that the dismissal had occurred due to his inadvertence because of the press of his duties as a State Senator. On February 14, 1941, pursuant to that motion, the trial court entered an order, reciting the opposition of government counsel, which vacated and set aside the order of May 19, 1938. On August 5, 1941, the government's counsel moved to vacate the February 14, 1941 order on the ground that it had been entered in violation of Federal Rules of Civil Procedure, rule 60(b), 28 U.S.C.A. following section 723c. In opposition, Wallace's counsel filed an affidavit, stating that the government's counsel had consented to the entry of the February 14, 1941 order on condition that Wallace would stipulate the facts so that the case could soon be tried on the merits, and that, in April 1941, such a stipulation had been made. On September 22, 1941, the trial court entered an order denying the government's motion. When the case came on for trial on December 16, 1942, the government moved for dismissal, on the ground that the trial court lacked jurisdiction, because its order of February 14, 1941 (vacating its earlier dismissal order) had been invalid. The trial court denied this motion, stating, inter alia, in an opinion that the government's counsel had consented to the order of February 14, 1941; that that order recited the opposition of the government's counsel; but that the recital had been made because the stipulations of facts (the condition of the consent) had not yet been finally agreed upon; and that that stipulation had been agreed upon and made in March 1941.
The case was then tried, on the merits, without a jury. It terminated in a judgment against the United States for $4,419.35, which the trial court found had not been lawfully due from Wallace and which he had paid under duress pursuant to an erroneous assessment. The case is here on the government's appeal. The government does not here assert that, on the merits, Wallace was not entitled to be repaid the amount of the judgment, but bases its appeal solely on the ground of the trial court's alleged lack of power to enter any judgment because of the alleged invalidity of the order of February 14, 1941, vacating the earlier dismissal order. On the oral agrument here, Wallace conceded that, unless the February 1941 order was valid, his claim against the United States was barred by the statute of limitations.
FRANK, Circuit Judge.
This suit, as begun, was within the jurisdiction of the trial court for the United States, by the Tucker Act, 28 U.S.C.A. § 41(20), has given its consent to be sued in the district court for such a refund of taxes in an amount not to exceed $10,000. The United States in effect concedes that it owed Wallace the amount of the judgment for moneys it had obtained from him by duress, and that it would be obliged to repay him that sum but for the dismissal of his suit, through the excusable neglect of his lawyer, after the statute of limitations had run against his claim.
There seems to be no dispute that (for reasons we need not discuss) the dismissal order was improper under the local rules of the trial court. Even so, that order was not void and, if not validly vacated, it terminated the action so that the claim could no longer be asserted. The issue, then, is as to the validity of the order of February 14, 1941 reinstating the suit.
1. We are satisfied that the record shows that the trial court entered that order on the consent of government's counsel. If the defendant were a private person, that consent would conclude the matter and Wallace's judgment would be unassailable. But, assuming for the moment that, absent such consent by defendant's counsel, the trial court could not properly enter the vacating order (an issue we shall consider later), the question arises whether a government counsel has implied authority (there being no express authority) by such a consent to eliminate the defense of the statute of limitations. We are constrained to answer in the negative. The Supreme Court has held inapplicable to suits against the United States the well-established rule that a defendant, either expressly or by failure to assert it, may waive that defense. Finn v. United States, 123 U.S. 227, 8 S.Ct. *243 82, 31 L.Ed. 128; Munro v. United States, 303 U.S. 36, 41, 58 S.Ct. 421, 82 L.Ed. 633.[1] The rationale of those cases  that statutes by which the United States yields its immunity from suit must be literally and narrowly construed  has frequently, and recently, been reiterated.[2]
Our own recent experience in a somewhat similar case, Hammond-Knowlton v. United States, 2 Cir., 121 F.2d 192, serves to warn us that the Supreme Court has no inclination to adopt a more generous attitude.[3] We there suggested that, although taxes notoriously induce grumbling, the reflective citizen pays then cheerfully enough, when they have been lawfully assessed, because he recognizes such exactions as part of the necessary cost of maintaining a social organization without which he could not exist, but that, when the government improperly collects a sum under the guise of a tax and its repayment is concededly a matter both of justice and legal right, then to block that repayment by a statutory construction of an unusually strict character is to provoke criticisms of our government that are neither desirable nor easy to answer. Our opinion in that case expressed our distaste for the basic doctrine that a citizen of the United States cannot assert a claim in any court against his government, without its permission, for acts on its part injurious to him and for which, if done by a private person, the courts would award damages. Referring to the history of the immunity of foreign sovereigns from suits to which they do not consent,[4] we agreed with the statement of Mr. Justice Wilson in Chisholm v. Georgia, 2 Dall. 419, 471, 472, 1 L.Ed. 440, that such an immunity is repugnant to the fundamental conception of a democracy,[5] and we said that we thought that a democratic government ought not to be able to maintain that it has the attributes and prerogatives of a king who "can do no wrong." [121 F.2d 205.] We said further that we felt that, certainly when once the United States has, by statute, given its consent to be sued, that consent should not, through refined distinctions, be so stingily interpreted as to bar a citizen's just claim.[6] We cited Supreme Court decisions, however, that precluded our deciding the case then before us in favor of the affected citizen, cases which we, as an inferior court, could not disregard. And the Supreme Court denied review of our decision.[7]
Consequently we must here, once more, follow the niggardly rule and deny to a citizen a right to recover money which his government wrongfully obtained from him and which unjustly enriches it.[8]
2. Since, for the reasons noted, we are obliged to hold that the consent of the government's counsel to the vacating *244 order was inefficacious, that order cannot be supported unless it was authorized by Federal Rules of Civil Procedure, rule 60 (b).[9] However, that rule (except as provided in its last sentence, which we shall discuss later) does not justify the entry of such an order, unless it be based upon a motion made within six months after the entry of the order which the motion seeks to have the court vacate; and here Wallace's motion of November 4, 1940, was made more than two years after the dismissal order. Wallace argues that Rule 6(b) permits the court, for cause shown, to extend that six months' period;[10] he urges that, as that Rule explicitly excepts from its scope only Rule 59 and the period for taking an appeal, it must apply to motions made pursuant to Rule 60(b). We cannot agree. Interpretative devices such as expressio unius exclusio alterius have diminished importance today; they must yield to more obvious indications of intention.[11] The terms of Rule 60(b)  "but in no case exceeding six months"  are so emphatic as to preclude the importation of an exception via Rule 6(b). We reach the same conclusion as to the effect of Rule 6(c).[12]
3. The issue, then, narrows down to this: Was Wallace's motion of November 4, 1940 covered by the last sentence of Rule 60(b), i.e., was it "an action to relieve a party from" an "order"? We are in accord with the interpretation of that sentence in Professor Moore's admirably clear discussion in his Federal Practice, 3255-3276. Obviously it cannot have been intended that what may be done within six months, pursuant to the body of Rule 60(b), may also be done thereafter, under the exception contained in its last sentence. That exception, as Moore shows from its history, was designed to preserve proceedings which, before the promulgation of the new rules, could have been initiated after the expiration of the term, the new rules having abolished fixed terms. If, however, the word "action" in the exception refers only to such proceedings as, before the new rules, were independent suits, then the exception includes merely a proceeding to relieve from an order procured by "extrinsic" fraud. But we agree with Moore that the Rule's history indicates that "action" was intended also to cover whatever could have been done by a writ of error coram nobis or coram vobis, or a bill of review, or a bill in the nature of a bill of review, despite the fact that any such proceeding was, before the new rules, not an independent "action" but ancillary to the main suit.[13]
The consequence of that interpretation is that pursuant to a motion made or action begun after six months, no relief can be granted under Rule 60(b) except that which would previously have been proper, after the expiration of the term, in proceedings by way of such ancillary writs or bills or in an independent suit to set aside an order for "extrinsic" fraud.[14] The kind of relief Wallace sought here could *245 not, before the Rules, have been accorded him in such ancillary proceedings, and he made no charge of fraud.
The vacating order of February 4, 1941, was therefore wholly unauthorized; since it lacked validity, the trial court had nothing before it, and its judgment on the merits was erroneous.
Reversed.
AUGUSTUS N. HAND, Circuit Judge, concurs in the result.
NOTES
[1] See also cases cited in Munro v. United States, 2 Cir., 89 F.2d 614, 616, 617; United States v. Garbutt Oil Co., 302 U.S. 528, 534, 58 S.Ct. 320, 82 L.Ed. 405; Tucker v. Alexander, 275 U.S. 228, 231, 232, 48 S.Ct. 45, 72 L.Ed. 253; United States v. Michel, 282 U.S. 656, 659, 51 S. Ct. 284, 75 L.Ed. 598. Retzer v. Wood, 109 U.S. 185, 3 S.Ct. 164, 27 L.Ed. 900, was a suit against a Collector not against the United States.
[2] See, e. g., State of Minnesota v. United States, 305 U.S. 382, 388, 59 S.Ct. 292, 83 L.Ed. 235; United States v. Sherwood, 312 U.S. 584, 586, 590-592, 61 S.Ct. 767, 85 L.Ed. 1058; United States v. Nunnally Investment Co., 316 U.S. 258, 62 S.Ct. 1064, 86 L.Ed. 1455, 140 A.L.R. 792; United States v. Shaw, 309 U.S. 495, 501, 60 S.Ct. 659, 84 L.Ed. 888; United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 514, 60 S. Ct. 653, 84 L.Ed. 894; Eastern Transportation Co. v. United States, 272 U.S. 675, 682, 47 S.Ct. 289, 71 L.Ed. 472.
[3] The generous attitude voiced in Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265, turned out to be spasmodic as appears from the subsequent cases cited in the preceding footnote.
[4] See, e. g., Borchard, Government Responsibility in a Tort, 34 Yale L. J. 1, 129, 229; 36 Yale L. J. 1, 757, 1039; Holdsworth, History of English Law, II (3d ed. 1923) 252-256; III (3d ed., 1923) 464-466; IX (1926) 4-6; X (1938) 651-654.
[5] Cf. Langford v. United States, 101 U.S. 341, 343, 25 L.Ed. 1010; cf. United States v. Lee, 106 U.S. 196, 220, 1 S.Ct. 240, 27 L.Ed. 171.
[6] We remarked that, as "Congress is the legislative branch of a democratic government which does not claim to be the equivalent of a despotic monarch who can do no wrong, its intention * * * might be interpreted as other than excessively stingy."
[7] 314 U.S. 694, 62 S.Ct. 410, 86 L.Ed. 555.

In United States v. Nunnally Investment Co., 316 U.S. 258, 62 S.Ct. 1064, 86 L.Ed. 1455, 140 A.L.R. 792, the court, in effect, reaffirmed the doctrine we had deplored.
[8] We earnestly recommend that Congress amend the statute so that our government will not be exceptionally and unfairly favored.
[9] The new rules became effective September 16, 1938, and applied to the motion of November 4, 1940, pursuant to which the vacating order was entered.
[10] Rule 6(b) reads as follows: "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion (1) with or without motion or notice, order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon motion permit the act to be done after the expiration of the specified period where the failure to act was the result of excusable neglect; but it may not enlarge the period for taking any action under Rule 59, except as stated in subdivision (c) thereof, or the period for taking an appeal as provided by law."
[11] Securities and Exchange Commission v. C. M. Joiner Leasing Corporation, 320 U.S. 344, 64 S.Ct. 120. These observations do not necessarily apply to interpretation of contracts.
[12] See Reed v. South Atlantic Steamship Co., D. C., 2 F.R.D. 475.
[13] Being ancillary, such a proceeding could be begun without new service of process and by merely serving notice on the attorney who had represented the opposing party in the main suit. See, e. g., Gasquet v. Fidelity Trust & Safety Vault Co., 5 Cir., 57 F. 80; Simkins, Federal Practice, 759-760.
[14] We need not and do not here consider a question which we discussed but left undecided in Matter of Barnett, 2 Cir., 124 F.2d 1005, 1011, 1012: Does Rule 60 (b) preclude relief because of events occurring after the six months where, before the new rules (see Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475) relief would have been granted by a motion made after the expiration of the term but could not have been granted in an independent action or pursuant to the writs or bills described above?