22 So.2d 13
**GLASS, Superintendent of Insurance, v. PRUDENTIAL INS. CO. OF AMERICA.**

3 Div. 430.

Supreme Court of Alabama.

April 26, 1945.

Wm. N. McQueen, Acting Atty. Gen., and J. W. Arbuthnot and John O. Harris, Asst. Attys. Gen., for appellant.

Rushton, Weil, Stakely, Johnston & Williams and Hill, Hill, Whiting & Rives, all of Montgomery, for appellee.

GARDNER, Chief Justice.

Complainant, the Prudential Insurance Company of America, a foreign corporation, is now and has been for a long number of years engaged in a rather extensive insurance business in the State of Alabama. The privilege or license tax for conducting its business in this state is fixed in Title 51, § 816, Code 1940, the sum to be paid being largely in excess of that required of domestic insurance companies engaged in business in the state, as set out in § 819, Title 51, Code 1940. In June 1944, the Supreme Court of the United States in United States v. Southeastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, held that insurance companies which conduct a substantial part of their business transactions across state lines are engaged in commerce among several states and subject to regulation by Congress under the commerce clause. Acting upon the theory that the State is not permitted to discriminate against interstate commerce in favor of local commerce (Art. 1, § 8; Amend. Art. 14, § 1, United States Constitution; Hale v. Bimco Trading, Inc., 306 U.S. 375, 59 S.Ct. 526, 83 L.Ed. 771; Best & Co. v. Maxwell, 311 U.S. 454, 61 S.Ct. 334, 85 L.Ed. 275), complainant filed this bill on February 26, 1945, against Brooks Glass, as superintendent of Insurance of the State of Alabama, seeking a declaratory

judgment to the effect that the imposition of the tax was as against complainant unconstitutional and void, and in aid of the suit sought the issuance of an injunction against the defendant from cancellation of its license to do business in Alabama because of the failure to pay the tax required to be paid within the first sixty days of the calendar year at the time a verified statement is filed showing the total amount of premiums received by it for business done in this state for the preceding calendar year. Title 51, § 815, Code 1940. The application for temporary injunction was set down for hearing, as authorized by the statute, and upon consideration thereof the temporary writ was issued as prayed. From this decree the defendant has prosecuted the appeal.

■ For the protection of its right to do business a temporary injunction pendente lite was proper without the necessity of a decision in favor of the complainant upon the merits of the cause. Clearly there was a substantial question here to be decided and if the bill is properly filed, a temporary injunction to preserve the status quo was in order. Coxe, Ex'r, v. Huntsville Gaslight Co., 129 Ala. 496, 29 So. 867. As observed in Berman v. Wreck-a-Pair Bldg. Co., 234 Ala. 293, 175 So. 269, such an injunction does not depend on any advance finding for complainant on the merits. See also Odoms v. Woodall, Ala., 20 So. 2d 849.[1] It therefore appears that the real merits of the controversy are not here for review. It was so treated on oral argument and in brief and will be so considered here.

■ Construing our declaratory judgment statute, Code 1940, Title 7, § 156 et seq., this court has held resort could not be had thereto if adequate relief and appropriate remedy are presently available to the complainant party through the means of other existing forms of action or proceedings, noting some few exceptions not here pertinent. State v. Inman, 238 Ala. 555, 191 So. 224. At the time this bill was filed, there was lacking only a few days of the expiration of the sixty-day period (that is, dating from December 31, 1944) within which the complainant was due to pay the tax and file the required statement. If, therefore, there was a plain and adequate remedy at law, the declaratory judgment statute would be to complainant of no avail, nor would the bill have equity otherwise on the broad ground of public policy, which cannot lend its sanction to any remedial proceeding which might clog the machinery of civil administration. This court has often held that a taxpayer cannot resort to a court of equity to enjoin the collection of taxes claimed to be illegal unless with the illegality of the tax there is connected some recognized ground of equitable jurisdiction. Crow, Tax Collector, v. Outlaw, 225 Ala. 656, 145 So. 133. But as observed in Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25, 29, if the taxpayer should be required to pay the tax under protest without an adequate and complete remedy at law for its recovery if its payment was illegally exacted, this would justify the interposition of a court of equity to restrain the collection until there could be a judicial determination of the legality of the tax. "Ordinarily, however, a taxpayer will not be allowed to tie up the revenues of the State—its very lifeblood, without which it cannot function—unless, in addition to the illegality of the tax, there is connected with it some ground for equitable interposition." Nachman v. State Tax Commission, supra.

■ This case as here presented, therefore, resolves itself into a single question— was there a plain and adequate remedy at law? The Legislature attempted in what is now §§ 890 and 891, Title 51, Code 1940, to provide a remedy for a refund of the taxes so paid, if found to be illegally exacted of the taxpayer. This court in considering these provisions which were formerly §§ 379 and 380, General Acts 1935, p. 568, concluded and so held that the plan therein outlined contravened Art. 1, § 14, Constitution of 1901, to the effect that the State of Alabama should never be made a defendant in any court of law or equity. Raible Co. v. State Tax Commission, 239 Ala. 41, 194 So. 560. And the holding of this court has likewise been to the effect that this constitutional immunity from being sued cannot be waived by the State. Alabama Industrial School v. Adler, 144 Ala. 555, 42 So. 116, 113 Am. St.Rep. 58; State Docks Commission v. Barnes, 225 Ala. 403, 143 So. 581. In discussing the invalidity of the refund statute as found in §§ 890 and 891, supra, this court laid stress upon the fact that the taxes paid under protest were to be dis-

---

[1] Ante, p. 427.

tributed to the various governmental agencies and that upon a judgment being rendered as to the illegality of the taxes, the same were to be repaid by the State or the agencies receiving the same. In an effort to remedy the difficulty as found by the court of the refund statute of 1935, the Legislature amended §§ 890 and 891, supra, by an act approved July 10, 1943, General Acts, 1943, p. 369, which amendatory statutes now appear in the 1943 Cumulative Pocket Part, Code 1940, as §§ 890 and 891. If these amended statutes are held to be valid, we are of the opinion that they present a plain and adequate remedy at law. They are designed to cover license taxes of this nature. The amended § 890 gives the taxpayer who claims that the tax is either excessive or invalid in whole or in part, the right to pay such tax under protest, with the duty of the official receiving the same to note on the receipt that it was so paid under protest. Within sixty days after the protest payment, the taxpayer must commence suit against the officer for the recovery of such excessive or invalid tax, as the case may be, and unless the suit is commenced within that period of time, the taxpayer should be deemed to have waived the payment under protest and to thereby become a voluntary taxpayer. If suit is filed for the recovery of any tax paid under protest within the prescribed time and it is determined that the tax so paid was excessive or illegal, it should be refunded as provided in amended § 891. This amended section requires that the officer receiving the money which is paid under protest shall certify such sum of money to the State Treasurer with notice to the Treasurer it was paid under protest by the identified taxpayer and the Treasurer is required to hold such sum of money in an identified suspense account until it is judicially determined whether the tax was legally collected or the taxpayer abandons recovery of the money by failure to bring suit within the period of sixty days after payment thereof. The Treasurer is required to give notice to the Comptroller that such sums were set up in a suspense account and are, therefore, not available for allotment, allocation or disbursement until the validity of the tax is determined by the court. If in the suit brought by the taxpayer it is determined that any portion of the tax paid under protest was excessive or illegally assessed or collected, the Comptroller shall issue his warrant upon the Treasurer for a refund of such sum.

It is first insisted that §§ 890 and 891, as amended, are unconstitutional as violative of § 45 of the Constitution. This argument is based upon the theory that the title of the Act of 1943 was "To amend Sections 890 and 891, Title 51, of the Code of Alabama of 1940," and that as these sections thus sought to be amended had been declared unconstitutional, the title is defective and does not meet the requirements of § 45. That a section of the Code may be amended by reference to the section number only is well settled by our decisions. Of course, it is understood that the amendatory act must be germane to, supported by and supplemental to the sections of the act sought to be amended. State ex rel. Troy v. Smith, 187 Ala. 411, 65 So. 942. As observed in Harris v. State, 228 Ala. 100, 151 So. 858, 862, the "theory is that the reference is for identification. When so identified, the amending act is complete in itself, and is not dependent upon the repealed act for any other purpose. The fact that it had been repealed does not militate against its use for identification." The Harris case also pointed out that the same reasoning is applicable to a statute which has been declared unconstitutional, saying: "It does not purport to revive a dead act, but creates a new one, complete and definite, in full compliance with the requirements of the Constitution." These authorities suffice to demonstrate the lack of merit in the contention as to § 45 of the Constitution.

The question of difficulty, however, arises out of the contention that the amended statutes (§§ 890 and 891) are still invalid as violative of Art. 1, § 14, of the Constitution, prohibiting a suit against the State. It is, of course, a familiar rule for the guidance of this court in construing questions of this nature, that is, the constitutionality vel non of a statute, that the court is under duty to sustain the act unless it is clear beyond reasonable doubt that it is violative of this fundamental law. It is also a familiar rule that where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other would be valid, the court should adopt the construction which would uphold it. Or as otherwise stated, it is the duty of the courts to adopt the construction of a statute to bring it into harmony with the Constitution if its language will permit. Ala-

584

bama State Federation of Labor v. McAdory, Ala., 18 So.2d 810.[1] The decided weight of authority is to the effect that a suit brought against State officers in their official capacity is not a suit against the State as is forbidden by law, where the suit is to enjoin a State official from enforcing an unconstitutional law. 49 Am. Jur. p. 312; Hampton v. State Board of Education, 90 Fla. 88, 105 So. 323, 42 A.L.R. 1456. In this latter authority the court cites International Imp. Fund v. Bailey, 10 Fla. 112, 81 Am.Dec. 194, to the effect that where title to State property has been vested by statute in state officials as trustees, with express duties to perform, a suit with reference to such trust duties is not a suit against the State. In Atchison, T. & S. F. Ry. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 217, 56 L.Ed. 436, Ann. Cas.1913C, 1050, the court was considering an action to recover taxes paid under protest, the plaintiff contending that the law under which the tax was levied was unconstitutional. The court there observed: "The rule being established that, apart from special circumstances, he cannot interfere by injunction with the state's collection of its revenues, an action at law to recover back what he has paid is the alternative left." Under the provisions of § 6 of the Act there under review, the money was paid into the general treasury of the State, with the receipt from the Treasurer showing to what account and from what source it was derived and with the further provision for a refund if determined in any action at law or equity that the tax was erroneously paid. See Sessions Law of Colorado, 1907, p. 548. The suit appears to have been against O'Connor individually, the officer who collected the tax. The holding was that if he had no right to collect the money, doing so in the name of the State did not protect him. Evidently answering the argument that the suit was one against the State, the court observed: "It is said that the money, as soon as collected, belonged to the state. Very likely it would have but for the plaintiff's claim, assuming it to remain an identified trust fund; but the plaintiff's claim was paramount to that of the state, and even if the collector of the tax were authorized to appropriate the specific money and to make himself debtor for the amount, it would be inconceivable that the state should attempt to hold him after he had

been required to repay the sum." Counsel for complainant lays some stress upon Great Northern Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121, where the court had under review an Oklahoma statute and expressed the opinion that it was a suit against the State. The O'Conner case was therein differentiated upon the theory that the suit was against the individual and not against the officer. The dissenting views were to the effect that there is involved much formalism in regard to matters of this nature, which leads to inconsistent refinement of reasoning. But accepting the majority view in the Read case, supra, it would, after all, resolve itself into a question as to whether or not our statute could be reasonably construed as authorizing a suit against the officer as an individual rather than in his official capacity. Amended §§ 890 and 891, the substance of which has hereinbefore been stated, constitute a remedy in the nature of a declaratory judgment. The money paid under protest is not to be mingled with the general funds of the state. It is not to be allocated or disbursed. It must be identified and held in the nature of a trust fund, awaiting the determination of the court as to the legality of the tax. There is nothing in the statute which requires that the officer collecting the money should be sued in his official capacity. Of course, and very naturally, the suit is against the officer, the statute so provided for identification. If the officer collects the tax under an unconstitutional statute, the fact that he is an officer gives him no protection. Finnell v. Pitts, 222 Ala. 290, 132 So. 2. If the statute may be so reasonably interpreted as to require suit against the officer in his individual capacity and not as an official, thus avoiding any constitutional question, then it should be so construed by this court. But we do not think a resort to this formalism is necessary to uphold this act. In Curry v. Woodstock Slag Corporation, 242 Ala. 379, 6 So.2d 479, 480, this court entertained a declaratory judgment suit against the Commissioner of Revenue for the State of Alabama, as the chief executive officer of the State Department of Revenue. The purpose of the bill was to have determined in advance the construction and validity of the statutes applicable to the sales tax. It was clear that in that case the complainant had no plain and adequate remedy at law and the

---

[1] Ante, p. l.

court there observed: "It is not at all the necessary consequence of a suit to settle an actual controversy with such an officer before the deed is done that it be in essence one against the State. An officer is often confronted with the problem of what the law means which requires certain acts on his part and whether it is valid. * * * When such a controversy arises between him and an individual the Declaratory Judgments Act furnishes the remedy for or against him. When it is only sought to construe the law and direct the parties, whether individuals or State officers, what it requires of them under a given state of facts, to that extent it does not violate section 14, Constitution." It is difficult to distinguish the holding in the Curry case in principle from that here involved in considering amended §§ 890 and 891. The decision in the Southeastern Underwriters Association case, supra, as we have noted, was rendered in June, 1944. Up to and including December 31, 1944, complainant had no remedy at law. But under the Curry case, a bill could have been filed seeking a declaratory judgment as to the validity of this tax, which was to become due January 1, 1945, and payable if complainant was to continue in business in this State. There would appear to have been no difficulty in a final determination of the matter before the due date of the tax. But had it been otherwise, the bill being properly filed, injunctive process in aid of the pending suit would have been appropriate. But having waited until the tax was due, and until only a few days before the date of its delinquency, it was, we think open to complainant to follow the terms of the statute by payment under protest and bring the suit within the sixty-day period prescribed, wherein the validity of the tax could have been determined. If the tax is determined to be invalid, complainant would have been entitled to his refund. There is no judgment rendered against the State or against the officer collecting the money. It is in substance and effect the same as a declaratory judgment, which was declared available to the taxpayer in the Curry case. The one is in advance while the other is after the tax is due. The matters looking to a refund of the money call only for performance of ministerial duties and it will be assumed, of course, that the officer will perform his duty, but if he fails to do so, a writ of mandamus would be available.

To arrive at a proper understanding of our constitutional inhibition as to suits against the State, the underlying theory of such provision should be considered. After all, Art. 1, § 14, of our Constitution, is but the expression of an established principle of jurisprudence in all civilized nations resting upon public policy that the sovereign cannot be sued in its own courts or any other court without its consent. It is inherent in the nature of the sovereign not to be amenable to the suit of an individual without its consent. This doctrine rests upon reason of public policy—the inconvenience and danger which would follow from any different rule. Considering these underlying principles, therefore, there are many cases pointing out limitations on the rule found noted in 49 Am.Jur. p. 307 et seq. In a number of states (Oklahoma among them) the State may be sued with its consent, the Legislature being the proper body to authorize such suits. 49 Am.Jur. p. 304.

Differing in some respects but bearing similarity to the statute which we are now considering (Antrim Lumber Co. v. Snead, 173 Okl. 47, 52 P.2d 1040), the Oklahoma court held that the suit was one against the State under the facts as there set forth, but that the taxpayer had not followed the statute and therefore was not entitled to recover, and that holding was approved in the Read case, supra.

Counsel for complainant lay some stress upon statements in the majority opinion in the Read case, in comparing the Oklahoma statute to that of California treated in Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140, to the effect that the difference was an immaterial one wherein the Oklahoma statute provided that the money collected is to be held separate and apart by the collector instead of in the general fund of the State Treasury. The opinion in the Read case clearly indicates that if the suit had been against the officer in his individual rather than his official capacity, the holding would have been different, i.e., it would not have been a suit against the State, thus differentiating the case from the O'Conner case supra, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436, Ann.Cas.1913C, 1050.

The dissenting views in the Read case are to the effect that too much stress is laid upon this mere matter of form. With all due respect to the holding in the Read case, we are impelled to the conclusion that:

a provision in a refund statute requiring a fund held separate and apart, not to be allocated or distributed pending the question of the determination of the legality of the tax, is a matter of some materiality. In the O'Conner case, supra, concerning the Colorado statute which permitted the funds to go into the general treasury, the court treated it as an identified trust fund, and that the taxpayer's claim to the money pending the determination of the legality of the tax was paramount to that of the State. In the Colorado statute nothing was said concerning how the question of the legality of the tax was to be determined, i.e., against whom the action should be brought. Section 6 of the Act merely provided for refund of the money if it should be determined in an action at law or in equity that it had been erroneously paid. Considering our own State the fund of the taxpayer under the statute is a trust fund, as we have already pointed out. It cannot be allocated or distributed, and is to be kept by the Treasurer separate and apart from the general funds of the State.

As pointed out by the decisions in 49 Am.Jur. p. 307 et seq., it is the nature of the suit or relief demanded which the courts consider in determining whether a suit against a State officer is in fact one against the State within the rule of immunity referred to, and it is not the character of the office of the person against whom the suit is brought. Illustrative of this limitation is our Curry case, to which we have referred. If we are to stick to the letter and lay stress upon formalism, even such a declaratory judgment suit as involved in the Curry case could not have been maintained. And a further illustration is to be found in State ex rel. Turner v. Henderson, 199 Ala. 244, 74 So. 344, L.R.A. 1917F, 770, where this court held the Governor subject to a mandamus suit for the enforcement of a ministerial duty prescribed by statute. The theory upon which that decision rested was that the mere fact that the officer was the Governor should not deter the courts from the exercise of their jurisdiction, since the authority of the courts is supreme in the determination of all legal questions judicially submitted to them within their jurisdiction, and that no one is exempt from the operation of the law. And in the Curry case, supra, the court held, taking what we think was a common-sense view, and following many authorities cited in the opinion, that our constitutional provision as to immunity of the State from suit was, by such character of litigation, in no manner infringed. So in the instant case. Setting aside form and looking to substance, our statute merely contemplates that taxes paid under protest shall be held in trust pending the determination of their legality. It is clear enough that to permit a State officer to hold the funds in trust is a matter of less inconvenience to the State than to permit the taxpayer to go into a court of equity and enjoin the officer from ever receiving it. We would not, of course, in any manner infringe upon the integrity of Art. 1, § 14, of our Constitution, but here as in the Curry case we merely hold to the view that a common-sense construction of the Constitution upholds a statute of this character. As we have previously observed, if a tax refund statute of this nature is to be stricken down, then we can conceive of no method of legislation which would permit a refund of a tax paid under protest. The question may be one not free from difficulty but we are not persuaded beyond a reasonable doubt of the invalidity of §§ 890 and 891, as amended.

It is next insisted that the remedy at law is not plain and adequate for the reason there is no provision for the payment of interest upon the money paid under protest. Nutt v. Ellerbe, D.C., 56 F.2d 1058. The State contends that provision for the payment of interest may be implied. We cannot agree with either contention. In Schlesinger v. State, 195 Wis. 366, 218 N.W. 440, 57 A.L.R. 352, the Wisconsin court treated this question and the holding was to the effect that when a tax refund statute is silent as to interest, it does not imply that interest should be paid. On the contrary, the intention thereby disclosed is denial of interest under it. The opinion discusses the matter of interest, calling attention to the fact that at common law the terms of usury and interest were synonymous and that under the common law the taking of interest was usury and a punishable offense. After all, as pointed out by that decision, the matter of interest is one dependent in cases of this nature upon statute. Indeed, we are inclined to the view that the lawmakers were careful to omit the question of interest for the reason that interest must come out of the general treasury of the State and thus perhaps concluded that it would endanger

the validity of the statute under § 14, supra, of our Constitution, and it would seem, interest could not be paid from the State Treasury without an appropriation therefor. We think the statute contemplated a speedy determination of the question as to the validity of the tax and a refund only of the actual amount paid.

It results, therefore, that our conclusion is that complainant had a plain and adequate remedy at law and that the bill was without equity. As a result, the decree granting the temporary writ of injunction is reversed and the cause remanded.

Reversed and remanded.

THOMAS, BROWN, and LIVINGSTON, JJ., concur.

FOSTER, STAKELY, and SIMPSON, JJ., concur in result with a special concurring opinion.

FOSTER, Justice (specially concurring).

I concur in the substance of the Court's opinion. But I do not think it is necessary to support it that the legislature should have provided that the fund in question must be set up in a suspense account and not be available for allocation or distribution; as contained in amended section 891, Title 51, Code Pocket Supplement. I think, as said in the opinion of the Supreme Court of the United States in the Oklahoma case (Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121), cited in the opinion of this Court, supra, that such a feature is immaterial. Section 891, before it was amended, and as it was held unconstitutional in the Raible case, (Raible Co. v. State Tax Commission) 239 Ala. 41, 194 So. 560, provided that the officer collecting the tax shall not be personally liable for it, although it should be held to be illegally collected. And section 890, Title 51, Code, provided that the Court shall order the same to be repaid by the State— clearly a judgment against the State. It is not so provided in the amended sections 890 and 891. I think the validity of sections 890 and 891 is to be upheld on the theory that the suit authorized by them is essentially a suit against the officer personally. There is no doubt of his personal liability, since section 891 does not now relieve him of it as before. Atchison, etc., Ry. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436, Ann.Cas.1913C, 1050; United States v. Nunnally Inv. Co., 316 U.S. 258, 62 S.Ct. 1064, 86 L.Ed. 1455, 140 A.L.R. 792.

The effect of the amended section 891 is to make an appropriation for the relief of an officer who shall have collected illegal taxes for which he is personally liable when such taxes have been covered into the treasury. There is no doubt of such legislative authority, and there is no doubt of such personal liability. In making the appropriation, the legislature is of course at liberty to provide that the fund shall not be disbursed, but retained in the treasury until the suit is determined, and if it is determined against the officer that it be used in satisfying his liability. But I do not think that it is material that it should be done in that form, since the appropriation may be made out of the State's general fund.

A judgment against the officer under amended sections 890 and 891, supra, is not one to compel him, nor anyone else, to use State funds to reimburse the plaintiff as said in the Oklahoma case, supra, to have been so. The State is not required by the judgment to do anything. But the State may make an appropriation for an anticipated proper purpose payable upon a named condition. In the Oklahoma case, supra, the opinion stresses the fact that the suit is to compel the officer sued to use State funds for a certain purpose, and so it was held to be a suit against the State. But the theory of the O'Connor case, supra, is that the legislature made what amounts to an appropriation to provide for "any difficulty in which the Secretary of State otherwise might find himself in case of a disputed tax." I do not think it is material whether the State officer is named as such in the suit, or is sued individually. A judgment against him as an officer of the State is not one which by itself (unaided by an appropriation) requires or authorizes him or anyone else to use State funds in its payment. But the judgment, whether against him as an officer or as an individual, is the existence of the condition on which the legislative appropriation is payable. It is for a proper purpose, because it satisfies the State's moral obligation to repay a tax which the State has received but which it was not due to receive.

The theory is the same which supports the statute providing for the State Board of Adjustment. Sections 333 to 344, Title

55, Code; Hawkins v. State Board of Adjustment, 242 Ala. 547, 7 So.2d 775.

I am authorized to say that Mr. Justice STAKELY and Mr. Justice SIMPSON concur in the foregoing treatment of this subject.