William A. Clarke v. Commissioner.
Clarke v. Commissioner
Docket No. 4464.
United States Tax Court
1946 Tax Ct. Memo LEXIS 295; 5 T.C.M. (CCH) 11; T.C.M. (RIA) 46002; January 11, 1946
Henry D. O'Connor, Esq., 642 Real Estate Trust Bldg., Philadelphia 7, Pa., for the petitioner. William H. Best, Jr., Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of deficiencies in income tax for the calendar years 1940 and 1941 in the respective amounts of $1,677.27 and $5,655.18. The petition alleges as follows: (a) The Commissioner erred in disallowing the deduction for accrued interest on various obligations of the taxpayer, the taxpayer filing his income tax returns upon the accrual basis. (b) The Commissioner erred in concluding that the accounting method of the taxpayer does not clearly reflect the income of a taxpayer upon the accrual basis. The facts are shown by the pleadings, a stipulation of facts signed *296 by the parties (incorporated herein by reference), and certain exhibits filed by the respondent. Findings of Fact The petitioner is a resident of Philadelphia, Pa. He filed his income tax returns for 1940 and 1941 with the collector of internal revenue for the first district of Pennsylvania, at Philadelphia. From 1925 to 1930 the petitioner was engaged in a mortgage brokerage business under the name of William A. Clarke & Co. He was the sole owner of the business and received his income in the form of commissions. During these years petitioner's gross earnings averaged approximately $100,000 per year. In 1931 the petitioner consolidated his business with the Seaboard Bond and Mortgage Co., which was owned by the Integrity Trust Co., forming a new corporation called the Integrity Mortgage Guarantee Co. Petitioner was president of this new corporation In 1932 the name of the new corporation was changed to First Mortgage Co. of Philadelphia. Petitioner also became a director and officer of various associated corporations. Petitioner's status was thus changed in 1931 from that of an entrepreneur to that of a corporate employee; and, thereafter, he received most of his income *297 in the form of salaries. During the period 1928 to 1931 the petitioner borrowed nearly $400,000 from various banks, usually giving securities and real estate as collateral. Petitioner used some of this money for business purposes but most of it was used to purchase stock of the United Security Life Insurance & Trust Co., a Philadelphia bank, in an attempt, with others, to obtain a controlling interest in it. Petitioner's investment in the United Security Life Insurance & Trust Co. became worthless in 1932 and he remained heavily indebted to the various banks from which he had borrowed money. As of the calendar years ended December 31, 1940, and December 31, 1941, petitioner was indebted to various banks as a result of the loans above referred to as follows: Date of
Amt. of
Principal
Original
Original
Amount
Interest
Name of Bank
Loan
Loan
Due
Accrued
1940
1941
1940
1941
1. First Nat'l Bank of Phila.
1928
$224,000.00
$212,688.09
$212,688.09
$12,761.28
$12,761.28
2. Integrity Trust Co.
1929-32
95,736.43
99,708.46
99,708.46
5,982.51
5,982.51
3. The Pa. Co. for Insurances
on Lives and Granting An-
nuities
10/1/31
16,871.36
16,871.36
16,871.36
1,012.28
1,012.28
4. Phila. Nat'l Bank
4/7/30
30,000.00
21,693.17
21,693.17
1,323.26
1,323.26
5. United Security Trust Co.
3/14/29
5,550.00
2,410.20
0 *
144.61
0
TOTALS
$372,157.79
$353,371.28
$350,961.08
$21,223.94
$21,079.33
*298 Since 1931, there were reductions in the amounts of the various debts of petitioner to the banks, but these reductions were the result of sales of collateral by the banks and the application on the loans of dividends on stocks, and were not the result of any cash payments by petitioner with the exception of $1,000 paid by the petitioner on account to the Integrity Trust Co. on December 31, 1938, and interest aggregating $1,470.22 in 1937 and $1,061.95 in 1938. Prior to the taxable years, during 1931, 1932 and 1933, several of the banks charged off to their reserves for contingency accounts the amounts owed by the petitioner. However, these charge-offs did not constitute cancellation of the indebtedness. On April 24, 1933, the Integrity Trust Co. charged off against its reserve for contingencies $6,334.35 of the indebtedness of the petitioner as of that date. On May 1, 1933, the balance of petitioner's indebtedness on the bank's *299 books was $25,405, and that amount was finally charged off and petitioner's card marked "Uncollected." On October 21, 1932, The Pennsylvania Co. charged off to its contingency reserve account $1,871.36. On November 30, 1932, the bank charged off to its contingency accounts the balance of the indebtedness as of that date. On July 6, 1931, the amount owed by petitioner to The Philadelphia National Bank was $22,000. The bank charged off to its contingency reserve account $10,000 on December 31, 1931, and $12,000 on September 30, 1933. On March 1, 1943, the bank obtained new notes from the petitioner, one covering principal of $21,693.17, and the other accrued interest in [the] amount of $14,842.06 representing interest from January 1, 1932, up to that time. On December 30, 1932, the First National Bank of Philadelphia transferred the entire amount of the accounts receivable representing petitioner's indebtedness to that bank, to an affiliated company called the Colonial Finance Co., together with the security. The transfer to the Colonial Finance Co. was a transaction in which the First National Bank of Philadelphia charged off the entire balance of petitioner's indebtedness as *300 "uncollectible" and transferred it to the Colonial Finance Co. under a "sale." The last balance sheet stating the assets and liabilities of the petitioner was prepared as of May 31, 1937, and shows as follows: ASSETS
Cash in Bank
$1,453.75
Cash on Deposit Held Under
Notes Payable
448.04
Cash Surrender Value of Life
Insurance Policies
6,903.91
Investments (All Pledged on
Notes Payable)
23,731.13
Real Estate (Subject to $8,000
Mortgage)
7,000.00
Total
$39,536.83
LIABILITIES
Notes Payable
$322,453.97
Accrued Interest on Notes
Payable
111,350.31
Accounts Payable
11,153.41
Recorded Judgments
102,948.24
Mortgage Loan
8,000.00
Total
* $555,905.93
There have been no material changes since that date except that additional interest accrued on the aforesaid bank indebtedness. As of December 31, 1940, such accrued interest totaled $180,285.06 and as of December 31, 1941, $208,364.39. During the taxable years 1940 and 1941 the petitioner was insolvent. He is insolvent at the present time. In 1925 H. S. McCaffrey, a certified public accountant, set up books *301 of account for William A. Clarke & Co. Double entry books of account were used, including accounts receivable and accounts payable ledgers. The books were kept on the accrual basis. From 1925 to 1931 McCaffrey prepared petitioner's income tax returns upon the accrual basis. During the taxable years 1940 and 1941 McCaffrey continued to prepare petitioner's income tax returns and to state thereon that petitioner's income tax returns were prepared and his books were kept on the accrual basis. Petitioner has never requested permission of the Commissioner to change the method of accounting used in filing his returns. For the years 1937, 1938 and 1939 the petitioner filed joint returns with his wife, Eleanor S. Clarke. The returns filed for 1940 and 1941 were separate returns and the deficiencies involved herein have been determined against the petitioner individually. All of the items of income and expense reported in petitioner's income tax returns for 1940 and 1941 were on the cash receipts and disbursements basis except in respect of interest upon the petitioner's indebtedness to the banks above referred to. The accruals of interest claimed as a deduction in the returns for 1940 *302 and 1941 on such indebtedness amounted to $21,223.94 for 1940, and $21,079.33 for 1941. In the determination of the deficiencies for those years the respondent disallowed the deduction from gross income of the above items of accrued interest upon the ground that they were not "interest paid or accrued" within the taxable year on indebtedness, and because the method in respect of said item used in such returns does not clearly reflect the petitioner's income. The petitioner in this proceeding is the identical William A. Clarke who was the petitioner, together with his wife, Eleanor S. Clarke, in a proceeding before the United States Board of Tax Appeals entitled "WILLIAM A. CLARKE AND ELEANOR S. CLARKE, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent." Docket No. 107120. The issue involved in said proceeding, Docket No. 107120, is identical with the issues presented in the present proceeding, with the exception that in Docket No. 107120 the taxable years 1937, 1938 and 1939 were at issue. Decision in Docket No. 107120 was entered June 18, 1942. The petitioners took no appeal from such decision and in due course the decision became final. The method of reporting *303 employed by the petitioner in the filing of his income tax returns for 1940 and 1941 does not clearly reflect his taxable income for those years. The cash basis used by the respondent in the determination of the deficiencies does clearly reflect the taxable income. Opinion The question here presented is whether the petitioner is entitled to deduct from his cash income for the years 1940 and 1941 $21,223.94 and $21,079.33, respectively, of interest alleged to have accrued upon indebtedness. The respondent disallowed these deductions upon the ground that the method of reporting used by the petitioner in making his returns did not clearly reflect his income. He further determined that the petitioner was entitled to deduct from his cash income only expenses, including interest actually paid. Such items have been allowed as deductions. The respondent pleads that the issue presented is res judicata. He says that precisely the same question was before the Board of Tax Appeals in Docket No. 107120, involving deficiencies in income tax for 1937, 1938 and 1939 in the respective amounts of $1,329.41, $451.77 and $607.36. The petitioner contends that the issue is not res judicata by reason *304 of the decision entered in Docket No. 107120, since in that case the petitioners before the Board of Tax Appeals were the petitioner and his wife, Eleanor S. Clarke, whereas in the instant proceeding William A. Clarke alone is the petitioner. In Nachod & United States Signal Co. v. Helvering (C.C.A., 6th Cir.), 74 Fed. (2d) 164, it was said: Res judicata is defined ( Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, * * *) as merely a rule of public policy designed to prevent the reopening of questions which have been decided by a court of competent jurisdiction. "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties." * * * The court further said: * * * It is settled by Tait v. Western Maryland Railway Co., 289 U.S. 620, * * *, that the doctrine of res judicata applies to cases in the courts under the tax laws, and that, where the parties are the same and the question identical, the fact that different tax years are involved will not prevent its application. *305 It is also settled ( Hart Steel Co. v. Railway Supply Co., 244 U.S. 294, * * *), that a decision of one court in a case involving the same parties and the same subject-matter may be interposed in another court of co-ordinate jurisdiction, even though the latter first acquired jurisdiction of the controversy, and that a motion for affirmance seasonably made to the latter, supported by proofs establishing identity of subject-matter and privity of parties, is a proper means of raising the defense of res judicata therein. * * * The petitioner contends that the issue is not res judicata by reason of the decision of the Supreme Court in United States v. Nunnally Inv. Co., 316 U.S. 258. In that case it was held that a suit against the collector did not preclude the taxpayer from raising the same issues which had been decided in the suit against the collector in a subsequent suit against the United States, even though the very same res, that is, 1920 taxes, were involved in both actions. We do not think that this contention of the petitioner is well founded. It is true that in Docket No. 107120 the petitioner and his wife were the taxpayers. Whether the wife had *306 any income for the years 1937, 1938 and 1939 is not shown. She apparently appeared as one of the petitioners solely because she had joined her husband in making returns for those years. It is clear, however, that practically all of the income involved in those proceedings was the husband's income. It is furthermore clear that the husband had joint and several liability for the payment of the deficiencies. See George W. Schoenhut, 45 B.T.A. 812. In view of this situation we think it is immaterial that the wife does not appear as a petitioner in the proceeding at bar. We are furthermore of the opinion that it is immaterial that two or more petitioners were involved in the prior proceeding where only one of them is involved in the instant proceeding. Especially is this true where there is joint and several liability. In substance the parties involved in both proceedings are the same. We therefore are of the opinion that the respondent's plea of res judicata must be sustained. Even if we are in error upon this point, we still think that the petitioner is not entitled to deduct from gross income of the years 1940 and 1941 the amounts of accrued interest which the respondent *307 has disallowed as deductions. Section 41 of the Internal Revenue Code provides in material part as follows: SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * * It is not clear from the record in this case that the petitioner kept books of account upon the accrual basis. He was not engaged in any business which required the keeping of books of account or anything more than simple memoranda showing receipts and disbursements. The accountant who made out the petitioner's tax returns simply computed the interest which accrued on certain outstanding notes of the petitioner and included such interest as a legal deduction from the gross income. It is not clear from the record that these debts were *308 legal obligations of the petitioner during the taxable years. The notes may have been outlawed by the statute of limitations. There is nothing to show that the petitioner regarded the debts as valid debts or that the creditors had any claim against the petitioner for the collection of interest. Furthermore, there is nothing to show that the petitioner ever intended to pay interest upon the debts. It is stipulated that on March 1, 1943, the Philadelphia National Bank obtained new notes from the petitioner, one covering principal of $21,693.17, and the other accrued interest in the amount of $14,842.06, representing interest from January 1, 1932, up to that time. But it is not clear that the petitioner ever intended to pay the debts or the accrued interest upon his other outstanding obligations. Quite clearly if the outstanding obligations are not enforceable obligations and the interest is not collectible from the petitioner, and the petitioner never intends to pay the interest, he has no right to claim the deduction from gross income as a deduction. In our opinion in Docket No. 107120 we relied heavily upon Zimmerman Steel Co., 45 B.T.A. 1041, in which we held that *309 a bankrupt corporation in receivership was not entitled to deduct from gross income interest upon debts even though admittedly valid obligations of the taxpayer where there was little, if any, likelihood that the corporation would ever be able to pay such interest. Our decision in that case was reversed by the Circuit Court of Appeals for the Eighth Circuit, 130 Fed. (2d) 1011, upon the ground that a mere likelihood that the interest would never be paid was no valid ground for the disallowance of the deduction in the absence of any finding by the Board of Tax Appeals that the method of accounting and reporting used by the Zimmerman Steel Co. did not correctly reflect its income. The facts in the proceeding at bar are materially different from those which [were] obtained in the last cited case; for here the respondent has determined that the method of reporting used by the petitioner in his income tax returns for 1940 and 1941 does not clearly reflect the taxpayer's income. We are of the opinion that the evidence of record in this case, consisting of the stipulation of the parties, does not overcome the presumption of correctness that attaches to the respondent's determination. *310 The respondent goes upon the theory that the petitioner, making his income tax returns upon a cash basis as to all items except the interest, is not entitled to deduct items of interest until actually paid. We agree. Decision will be entered under Rule 50. Footnotes
*. Note: This debt was discharged in 1941 by the application of collateral security in the hands of the creditor to the indebtedness due. At present the only collateral in the hands of creditors is a tract of land held by the First National Bank.↩
*. Petitioner also had contingent liabilities totaling $175,549.85.↩